**In re GOLD STANDARD BAKING, INC., Debtor.**

**Bankruptcy No. 94 B 24672.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 3, 1995.

Michael Desmond, Office of the U.S. Trustee, Chicago, IL, for M. Scott Michel, U.S. Trustee.

Stephen B. Towbin, Michael V. Hughes, D'Ancona & Pflaum, Chicago, IL, for Gold Standard Baking, Inc., debtor.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion of Gold Standard Baking, Inc. (the "Debtor") for an order authorizing issuance of the Debtor's checks without a "Debtor in Possession" designation, and the response in opposition by M. Scott Michel, as United States Trustee for the Northern District of Illinois (the "UST"). The dispute focuses on the second requirement of the UST's Chapter 11 Operating Instructions and Reporting Requirements which provides: " 'Debtor in Possession' shall be imprinted on the face of all checks...."

The Court finds that the requirement at bar is not a duty imposed on debtors under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or the Local Bankruptcy Rules for the Northern District of Illinois, nor is the requirement expressly or impliedly contained within the specific grants of statutory authority vested in the UST pursuant to 28 U.S.C. § 586(a) or among the binding regulations promulgated by the Department of Justice concerning the operations of all United States trustees. Further, the Court finds that the requirement does not contravene or impair the Debtor's rights under 11 U.S.C. §§ 1107 and 1108 to conduct its business in the ordinary course in accordance with its business judgment. Because the requirement has not been promulgated as one of the regulations codified in the Code of Federal Regulations, it is not a binding legislative rule carrying the force of law pursuant to the Administrative Procedure Act. Hence, the requirement is advisory and directory, not mandatory. Accordingly, the Court hereby grants the Debtor's motion.

## I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. It constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## II. *FACTS AND BACKGROUND*

The Debtor operates a commercial bakery which produces and distributes fresh and frozen baked goods. On December 14, 1994, the Debtor filed a Chapter 11 petition. *See* Debtor's Exhibit No. 1. Since the petition date, the Debtor has continued to operate its business and administer the affairs of the bankruptcy estate pursuant to 11 U.S.C. §§ 1107 and 1108. Thus, it is a debtor in possession for purposes of 11 U.S.C. § 1101(1), as no trustee or examiner has been appointed.

The Debtor received the UST's Chapter 11 Operating Instructions and Reporting Requirements (the "instructions and requirements"). *See* Debtor's Exhibit No. 5. The instructions and requirements direct all debtors in possession, including the Debtor, to "furnish such information regarding the case as the [UST] requires." In addition, the instructions and requirements include certain reporting duties by debtors in possession. Only the requirement regarding the check imprinting of "Debtor in Possession" is at issue here.

Larry Goldberg ("Goldberg"), president, sole director, and principal shareholder of the Debtor, stated in an affidavit which was corroborated by statements he made at trial, that the Debtor has continued to conduct business, post-petition, with most of its pre-petition creditors and customers, and has advised many customers (approximately 60 to 70%) of the commencement, pendency, and status of this bankruptcy case. *See* Debtor's Exhibit No. 6. Goldberg testified that the Debtor has not been issuing checks post-petition with the required "Debtor in Posses-

sion" designation because he is concerned that compliance might result in lost business with both customers and suppliers, existing and prospective. Goldberg testified that most of the Debtor's suppliers are currently paid with checks, some certified, given on delivery. Goldberg testified that he thought that one promising prospective account was lost because the Debtor is in bankruptcy reorganization. Goldberg expressed concern that present customers might look to alternative sources. Notwithstanding such concerns and perceived bankruptcy stigma attaching to the Debtor, Goldberg admitted that those factors were outweighed by the Debtor's need for relief under the Bankruptcy Code. Goldberg also testified that the out-of-pocket cost of complying with the disputed requirement would be negligible.

## III. DISCUSSION

### A. The Debtor's Arguments

The Debtor's challenge to the subject requirement proceeds along four lines of attack. The Court will analyze each ground separately.

### 1. The Requirement Lacks Statutory Authority Under 28 U.S.C. § 586

The Debtor challenges the requirement at bar on the lack of any express statutory authorization under 28 U.S.C. § 586(a).[1] According to the Debtor, section 586(a) limits the UST to supervisory authority through an exhaustive, rather than illustrative, list of duties. The Debtor argues that section 586(a)(3) does not explicitly or implicitly grant the UST the power to promulgate substantive regulations on how debtors in possession can operate their businesses using their business judgment. The Debtor maintains that there are only two exceptions under section 586(a)(3): section 586(a)(3)(D), which authorizes the UST to take appropriate action to ensure the timely filing of reports, schedules, and fees required to be filed and paid, and section 586(a)(3)(G), which au-

---

1. 28 U.S.C. § 586(a) provides:

(a) Each United States trustee, within the region for which such United States trustee is appointed, shall—

(1) establish, maintain, and supervise a panel of private trustees that are eligible and available to serve as trustees in cases under chapter 7 of title 11;

(2) serve as and perform the duties of a trustee in a case under title 11 when required under title 11 to serve as trustee in such a case;

(3) supervise the administration of cases and trustees in cases under chapter 7, 11, 12, or 13 of title 11 by, whenever the United States trustee considers it to be appropriate—

(A)(i) reviewing, in accordance with procedural guidelines adopted by the executive office of the United States trustee (which guidelines shall be applied uniformly by the United States trustee except when circumstances warrant different treatment), applications filed for compensation and reimbursement under section 330 of title 11; and

(ii) filing with the court comments with respect to such application and, if the United States Trustee considers it to be appropriate, objections to such application.

(B) monitoring plans and disclosure statements filed in cases under chapter 11 of title 11 and filing with the court, in connection with hearings under sections 1125 and 1128 of such title, comments with respect to such plans and disclosure statements;

(C) monitoring plans filed under chapters 12 and 13 of title 11 and filing with the court, in connection with hearings under sections 1224, 1229, 1324, and 1329 of such title, comments with respect to such plans;

(D) taking such action as the United States trustee deems to be appropriate to ensure that all reports, schedules, and fees required to be filed under title 11 and this title by the debtor are properly and timely filed;

(E) monitoring creditors' committees appointed under title 11;

(F) notifying the appropriate United States attorney of matters which relate to the occurrence of any action which may constitute a crime under the laws of the United States and, on the request of the United States attorney, assisting the United States attorney in carrying out prosecutions based on such action;

(G) monitoring the progress of cases under title 11 and taking such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress; and

(H) monitoring applications filed under section 327 of title 11 and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications; received as trustee in cases under title 11;

(5) perform the duties prescribed for the United States trustee under title 11 and this title, and such duties consistent with title 11 and this title as the Attorney General may prescribe; and

(6) make such reports as the Attorney General directs.

28 U.S.C. § 586(a).

thorizes the UST to monitor the progress of cases and to take such action as is appropriate to prevent "undue delay." *See* 28 U.S.C. §§ 586(a)(3)(D) and 586(a)(3)(G). Thus, the Debtor contends that the statute does not grant the UST any regulatory authority over debtors in possession. The Debtor also argues that the UST's reliance on section 586(a)(5) is misplaced because that section only provides that the UST shall perform the duties prescribed under the Bankruptcy Code and title 28, and such duties consistent therewith as the Attorney General on behalf of the Department of Justice may prescribe. In response, the UST argues that sections 586(a)(3) and 586(a)(5) allow the UST to establish the subject requirement along with the other unchallenged instructions and requirements.

■ The Court concludes that the Debtor's argument regarding the lack of statutory authority is well taken. There is no express or implied duty contained in section 586(a) that authorizes the UST to require Chapter 11 debtors in possession to imprint their checks with the "Debtor in Possession" designation. The only reference to procedural guidelines are those adopted by the Executive Office for United States trustees for applications filed for compensation and expense reimbursement under 11 U.S.C. § 330, and filing comments with the court with respect to such applications or objections thereto. *See* 28 U.S.C. §§ 586(a)(3)(A)(i) and 586(a)(3)(A)(ii). Section 586(a) does not expressly mandate the subject check imprinting requirement or set forth the parameters within which the UST can direct how the Debtor should conduct its ordinary business operations.

The Court disagrees with the Debtor's argument that there is a complete dearth of authority for appropriate regulatory authority. There are some binding regulations which have been promulgated concerning the authority of the UST's supervision of the administration of bankruptcy estates. 28 U.S.C. § 581 provides for appointment of the various United States trustees on a regional basis by the Attorney General of the United States. Supervision of all United States trustees is performed by the Executive Office for United States trustees, which is a part of the United States Department of Justice. *See* 28 C.F.R. § 58.1 (1994). Pursuant to 28 U.S.C. §§ 586(e) and 510, the Department of Justice has promulgated regulations concerning United States trustees relating to the Bankruptcy Code. *See* 28 C.F.R. §§ 58.1– 58.5 (1994). Those regulations, however, only speak to a United States trustee's authorization to establish a panel of private trustees, qualifications for membership on such panel, appointment of standing trustees, and that such appointments shall be made on a non-discriminatory basis. Most significantly for this matter, none of the extant regulations involve the UST's instructions and requirements.

## 2. The Requirement Contravenes the Debtor's Rights Under Sections 1107 and 1108

■ Next, the Debtor contends that the UST's check imprinting requirement improperly impairs its right to conduct business in the ordinary course in accordance with its business judgment as allowed by 11 U.S.C. §§ 1107 [2] and 1108.[3] The UST counters that merely printing a "Debtor in Possession" designation on the Debtor's checks gives actual notice to the payees or the subsequent

---

**2.** Section 1107 provides:
(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in section 1106(a)(2), (3) and (4) of this title, of a trustee serving in a case under this chapter.
(b) Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.
11 U.S.C. § 1107.

**3.** Section 1108 provides:

Unless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business.
11 U.S.C. § 1108.

holders of those negotiable instruments of the Debtor's status as a Chapter 11 debtor in a pending case. Such third parties may otherwise unknowingly become involved in this bankruptcy case through extensions of credit or acceptance of payment from the Debtor. The UST argues that new post-petition trade creditors, who have not received notice of the section 341 meeting of creditors, and who may not be aware of the pendency of the case, should be so advised via the check designation requirement. Then, if those creditors are forced to seek performance from the Debtor in case of a default, when necessary, they can seek permission from the bankruptcy court before enforcing their rights against the Debtor without risk of violating the automatic stay of 11 U.S.C. § 362(a). Pointedly, the UST notes that the Debtor will suffer no undue hardship or economic burden by complying with the requirement, and that the Debtor should not be able to effectively hide its status as a debtor in possession.

The Court concludes that the Debtor's argument that the check designation requirement impairs its right to conduct its business in the ordinary course lacks merit. The Debtor's ordinary business is that of purchasing supplies for baking and resale and distribution of baked goods. The imprinting of the Debtor's checks with the required designation advising of the Debtor's status does not serve to arbitrarily interfere with the Debtor's business operations.

### 3. The Requirement Affects the Debtor's Business

■ The Debtor's third line of attack is closely related to the second: that its business will be adversely affected by compliance with the requirement. The personal opinion of Goldberg with respect to the potential

adverse impact in complying with the requirement is sheer speculation on his part, and is not based on any objective evidence or experience. Any negative impact on the Debtor's business and perceived stigma attached thereto, was self-created when the Debtor voluntarily filed this Chapter 11 case. The record lacks any evidence to show that the Debtor has, in fact, lost any business, or that compliance with the requirement will result in the adverse effects feared by Goldberg. The Court finds that the evidence adduced regarding the impact of the requirement on the Debtor's business is contrary to the conclusion argued by the Debtor. Compliance with the requirement has not been proven, in any way, to impair the Debtor's ability to maximize post-petition revenues, minimize its costs, or impair its ongoing business relations with its trade creditors and customers. Moreover, the record is devoid of any evidence that the UST's requirement is unreasonable. The requirement as applied in all Chapter 11 cases in this district is not arbitrary. Hence, the alleged adverse impact on the Debtor's ability to conduct business, if it were to comply with the check imprinting requirement, is speculative.

■ In opposition to this line of argument, the UST contends that statutory burdens go with the benefits of the Debtor operating its business. The UST cites to 11 U.S.C. §§ 704(7) and 704(8) [4], incorporated via section 1106(a)(1) [5], as those burdens. The Court finds that the UST's reliance on section 704(8) with respect to the subject requirement is not well founded because such check imprinting does not involve filing an informational report with the UST or the Court. The plain meaning and application of section 704(8) focuses on filing information with the Court, the UST, and governmental taxing authorities. Imprinting checks with

---

**4.** Section 704(8) provides:

The trustee shall—
(8) if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disburse-

ments, and such other information as the United States trustee or the court requires.
11 U.S.C. § 704(8).

**5.** Section 1106(a)(1) provides:

(a) A trustee shall—
(1) perform the duties of a trustee specified in section 704(2), 704(5), 704(7), 704(8), and 704(9) of this title.
11 U.S.C. § 1106(a)(1).

the requisite designation does not fit within either the express or any implicit mandate of section 704(8).

■ The UST's strongest argument centers on section 704(7). That section provides that "unless the court orders otherwise, [the debtor is to] furnish such information concerning the estate and the estate's administration as is requested by a party in interest." 11 U.S.C. § 704(7). The UST contends that such information includes imprinting the Debtor's checks with the "Debtor in Possession" designation so as to give third parties notice of the bankruptcy. Undisputedly, the UST is a party in interest in the case. *See* 11 U.S.C. § 307. The Court finds, however, that the disputed requirement is more than a mere request by the UST. It is too great a stretch of section 704(7) to implicitly infer that the check imprinting requirement is the mandated furnishing of such information concerning the estate and the estate's administration. Imprinting the Debtor's checks with the "Debtor in Possession" designation may incidentally impart the information that the Debtor is a Chapter 11 debtor in possession, but that status, in and of itself, imparts no substantive information concerning either the bankruptcy estate or its administration. Consequently, the Court concludes that section 704(7), standing alone, cannot be properly extended to constitute a statutory basis for imposing the subject requirement upon the Debtor. In addition to the statutory duties prescribed in section 704, Congress expressly mandated certain other disclosures and duties of debtors. *See* 11 U.S.C. §§ 521(1)–(5) and 343. *See also* 11 U.S.C. §§ 1203 and 1303. Had Congress so intended it could have easily enacted the disputed requirement as one of the statutory duties imposed.

#### 4. The Relevant Case Authority Does Not Support the Requirement

The Court concludes that the case law cited by the parties does not support upholding the subject requirement as an enforce-

able regulation. The only case on point cited by the Debtor in support of its position is *In re Johnson*, 106 B.R. 623 (Bankr.D.Neb. 1989).[6] The *Johnson* court, faced with the same issue at bar, found that the UST's guidelines, specifically the check imprinting requirement, did not have the effect of law. *Id.* at 624. Thus, the court in *Johnson* refused to require the debtors to imprint either "Debtor in Possession" or their bankruptcy number on their checks. *Id.* at 625. The UST cited *In re Crosby*, 93 B.R. 798 (Bankr. S.D.Ga.1988). The *Crosby* case, however, is not on point because the court there declined to rule on the specific issue at bar. *Id.* at 805. Extant case law on the disputed guideline, though limited and not binding, is clearly in the Debtor's favor with respect to the instant dispute and is persuasive authority for its position.

■ The Court agrees in principle with the UST's point that the UST's instructions and requirements should be upheld where they find clear support in a statute or rule, as long as they are reasonable. That observation, however, begs the ultimate question of whether or not the subject requirement is properly binding and carries the force of law behind it. Neither the Bankruptcy Code, title 28, the Federal Rules of Bankruptcy Procedure, nor the Local Bankruptcy Rules of the Northern District specifically provide express authority for the requirement at issue. To that end, a brief venture into the morass and miasma of the intersection between administrative law and bankruptcy law is necessary. Lacking express foundation in either a statute or rule, the requirement must be examined to see if it is an enforceable regulation issued by the UST.

#### B. *The Lack of Federal Regulations Covering The Requirement*

From a review of the pertinent provisions of the Code of Federal Regulations (28 C.F.R. §§ 58.1–58.5 (1994)), it is clear that the Department of Justice, in overseeing the operations of the various United States trust-

---

**6.** The UST's attempt to distinguish *Johnson* as involving individual Chapter 11 debtors whose post-petition earnings from personal services are not part of the bankruptcy estate, as opposed to

post-petition income of a corporation, like the Debtor at bar, is not outcome determinative or persuasive.

ees, has not promulgated regulations governing the operations of Chapter 11 debtors in possession. None of the current regulations speak to the disputed requirement at bar. As an Executive Branch agency, the Executive Office for United States trustees, as part of the Department of Justice, acting in this district through the UST, seeks to bind the public and those members thereof who become Chapter 11 debtors through its instructions and requirements. In this matter, however, the Department of Justice has not promulgated any regulations published in accordance with the Administrative Procedure Act. Instead, the UST has issued its instructions and requirements serving as guidelines.

■ Federal agencies seeking to bind the public with regulations enforceable as law normally must promulgate "legislative rules"[7] made in accordance with the notice and comment procedures specified by Section 553 of the Administrative Procedure Act. *See* 5 U.S.C. § 553 (1988). *See also Chrysler Corp. v. Brown*, 441 U.S. 281, 302–03, 315, 99 S.Ct. 1705, 1718, 1724, 60 L.Ed.2d 208 (1979) (non-legislative rules do not have the force of law); *Batterton v. Marshall*, 648 F.2d 694, 701 (D.C.Cir.1980) (advance notice and public participation are required for those actions that carry the force of law). *See generally* Robert A. Anthony, *Interpretive Rules, Policy Statements, Guidances, Manuals, and the Like—Should Federal Agencies Use Them To Bind The Public?*, 41 DUKE L.J. 1311 (1992). To clarify this confusing area, Professor Anthony categorizes documents issued by agencies as: "legislative rules" promulgated in accordance with the Administrative Procedure Act; "interpretive rules" which interpret existing statutory or regulatory language; or "policy statements" if they do not fit within the prior two categories. *Id.* at 1323–1325. Only "legislative rules" are binding on the public and entitled to the full force and effect of law to which courts must defer. *Chrysler*, 441 U.S. at 302–03, 315, 99 S.Ct. at 1718, 1724.

■ The Court finds that the requirement in question does not fit within the category of an "interpretive rule" because it does not interpret any specific statutory language requiring such check designations for debtors, nor is the requirement one promulgated by the Department of Justice with respect to the UST's authority under the Bankruptcy Code. The guideline appears to fit within the category of a "policy statement" regarding the particular policy of the UST for this district. Because the requirement is obviously intended to be binding, the Court finds that it should have been issued as a legislative rule. When an administrative agency issues legislative rules in conformity with the Administrative Procedure Act, those rules are binding and have the force of law, and a court may not review them freely, but should accept them unless they are contrary to statute or unreasonable. *See, e.g., United States v. Morton*, 467 U.S. 822, 834, 104 S.Ct. 2769, 2776, 81 L.Ed.2d 680 (1984); *Schweiker v. Gray Panthers*, 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981).

The subject requirement has not been promulgated in accordance with the Administrative Procedure Act and, therefore, it is not binding upon this Court. As noted in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Court gives the UST's interpretation respectful attention, but arrives independently at its own interpretation of the binding effect of the requirement. *Id.* at 843–45, 104 S.Ct. at 2782–83. Thus, though reasonable and not arbitrary, the Court concludes that the subject requirement lacks the binding force of law to which published regulations codified in the Code of Federal Regulations are entitled.

## IV. *CONCLUSION*

■ Accordingly, as a result of the absence of either an express or implied statutory duty under the Bankruptcy Code or applicable Rule among the Federal or Local Rules of Bankruptcy Procedure imposing such a duty on the Debtor to imprint its checks, or a correlative enabling statute or rule, and in the absence of a federal regulation authoriz-

---

**7.** The Administrative Procedure Act defines a "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy...." 5 U.S.C. § 551(4) (1988).

ing the UST to so require, the Court concludes that the requirement at bar lacks the binding effect of law to be enforceable. Hence, the Court hereby grants the Debtor's motion.

■ In the absence of any evidence to show that the Debtor concealed or misrepresented its status as a debtor in possession, or similarly misled the public, the Court declines the UST's oral request made at the conclusion of trial to so order the Debtor to imprint its checks under sections 1107 or 1108, and denies the UST's oral motion for directed findings pursuant to Federal Rule of Bankruptcy Procedure 7052, incorporated by reference in Federal Rule of Civil Procedure 52(c).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.